**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>Dann B. Nerich</u>

    **v.**                                    Civil No. 13-cv-396-PB
                                         Opinion No. 2014 DNH 239

<u>Carolyn Colvin,</u>
<u>Acting Commissioner,</u>
<u>Social Security Administration</u>


<u>**MEMORANDUM AND ORDER**</u>


    Dann Nerich seeks judicial review of the Social Security
Administration's refusal to reopen his previously denied claim
for a period of disability and disability insurance benefits.
He makes three separate claims to support his motion to reverse
or remand the Commissioner's decision: (1) that the
Administrative Law Judge ("ALJ") lacked substantial evidence to
conclude that he had the mental capacity to understand the
procedures for requesting further review of his previous claim;
(2) that the ALJ erred by finding that additional evidence
submitted by Nerich did not warrant reopening his claim; and (3)
that the ALJ constructively reopened Nerich's claim by reviewing
it on the merits, rendering it subject to judicial review.  The
Commissioner has moved to affirm her decision as to claim (1)
and to dismiss claims (2) and (3) for lack of subject matter

jurisdiction.  For the reasons that follow, I grant the
Commissioner's motions and deny Nerich's motion to reverse.

## I.  BACKGROUND

### A.  Medical Evidence[1]

#### 1.  Clinical Records

Nerich is a 58-year-old male.  His physicians report that
he has "a long history of alcohol abuse."  Tr. at 457.  In
December 2010, he was diagnosed with cirrhosis of the liver.  He
was hospitalized for five days in January 2010 for ascites,[2]
edema,[3] and encephalopathy.[4]

Nerich consulted with his gastroenterologist, Dr. Rolland
C. Dickson, on March 2, 2010.  At that visit, Dickson noted that
Nerich presented as a "54-year-old male with end-stage liver

---

[1] Section A of the background section is taken substantially from
the parties' Joint Statement of Material Facts (Doc. No. 21).
See L.R. 9.1(b).  Minor stylistic and substantive changes have
been made, and citations to the administrative transcript have
been omitted except for direct quotations.

[2] Ascites is the effusion and accumulation of serous fluid in the
abdominal cavity.  Dorland's Illustrated Med. Dictionary
(Dorland's) 164 (31st Ed. 2007).

[3] Edema is the presence of abnormally large amounts of fluid in
the intercellular tissue spaces of the body.  Dorland's, supra
note 2, at 600.

[4] Encephalopathy refers to any degenerative disease of the brain.
Dorland's, supra note 2, at 622.

disease likely due to alcohol." Tr. at 463.  Assessing Nerich's encephalopathy, Dr. Dickson wrote, "On lactulose,[5] well controlled."  Tr. at 464.

Nerich again consulted with Dr. Dickson on May 19, 2010. Dr. Dickson recorded that Nerich "returns today still with intermittent confusion, ascites/edema well controlled. Weight loss and muscle mass loss have stabilized. He notes weakness, lack of interest in things, depression." Tr. at 448.  After a physical examination and reviewing lab work, Dr. Dickson wrote that Nerich presented with "end-stage liver disease likely due to alcohol." Tr. at 453.  He noted Nerich had been taking lactulose for symptoms related to encephalopathy and continued to complain of confusion intermittently. He felt many of Nerich's symptoms were "due to depression, would benefit from an antidepressant." Id.

On May 20, 2010, Nerich visited Linda D. MacDougall, FPMHNP, for follow-up therapy for his major depression.  She noted that Nerich had a good appointment with "Endocrine @ DHMC, liver improving." Tr. at 326.  However, MacDougall went on to record that Nerich was struggling with "loss of social support, marital stress became more apparent today.  Pt seems

---

[5] Lactulose is a drug used to treat, among other things, encephalopathy.

anger/perplexed with why wife doesn't spend more time with their son. Pt pleased that wt up a bit.  Wanted to begin exercising but no motivation."  Tr. at 326.  She felt that Nerich was experiencing major depression and asked him to begin taking the medication Amiloride.  She wrote that Nerich was still struggling with "intense anhedonia[6] and no motivation. Will begin to increase Fluoxetine."  Tr. at 326-27.

Nerich followed up with MacDougall on June 4, 2010. Her assessment was that Nerich appeared "more lethargic today. States he is sleeping better but not sure there has been any significant impact."  Tr. at 325.  She felt Nerich continued to experience major depression. She asked him to continue with supportive therapy and relationship building.  Id.

On June 30, 2010, Nerich visited primary care physician Dr. John Ford, complaining of low energy levels.  He reported that he was feeling well.  He was alert and oriented and in no acute distress on examination.

Nerich followed up with MacDougall on July 22, 2010, where she noted that he seemed more positive and was getting some projects done at home and looking for part-time work.  She again assessed that Nerich was experiencing major depression and

---

[6] Anhedonia is the total loss of feeling of pleasure in acts that normally give pleasure.  Dorland's, supra note 2, at 92.

should continue with supportive therapy.  He was taking the drug Fluoxetine for his depression.

Nerich met with Anna Lingelbach-Lorenz, PA-C, on July 27, 2010. On examination, he appeared alert and pleasant and was in no acute distress.

Nerich followed up with Dr. Dickson on September 1, 2010. Dr. Dickson indicated that Nerich's disease was complicated by "ascites, edema, intermittent confusion, muscle mass loss. His ascites, edema had resolved; his confusion had resolved, as had his muscle mass."  Tr. at 263.  Shortly after that office visit, Dr. Dickson corresponded with Nerich's primary care physician, Dr. Ford, on September 15, 2010, indicating that Nerich had reached the point "where he should be considered for a liver transplantation."  Tr. at 265.  On October 19, 2010, Nerich's depression and encephalopathy were both described as "controlled" by Dr. Dickson.

2.  Nerich's Testimony

Nerich testified at a hearing before Administrative Law Judge Thomas Merrill on April 29, 2013.  The ALJ asked Nerich to describe a typical day around November to December of 2009. Nerich stated that at the time, he lived in a big four-bedroom federal style home that required a lot of maintenance.  He generally took care of the house maintenance, cooking, cleaning,

and laundry.  Aside from that, he did a lot of reading.  Nerich stated that he had become terribly lethargic; he was also treated for depression, and the anti-depressant prescribed by his primary care physician had been somewhat helpful.  He said that he had experienced issues with memory and lack of stamina since December 2009.  Nerich stated that his memory issues because moderately chronic at one point but improved after his doctor prescribed lactulose and he altered his diet to alleviate constipation.  Nerich stated that his cognitive issues eventually stabilized.

B.   **Procedural History and the ALJ's Decision**

On January 20, 2010, Nerich submitted a claim for a period of disability and disability insurance benefits alleging disability beginning on November 15, 2009.  His claim was denied at the initial stage on June 22, 2010, and Nerich did not further appeal that denial.

On November 3, 2011, Nerich submitted a second claim for a period of disability and disability insurance benefits, again alleging disability beginning on November 15, 2009.  That application, too, was denied at the initial stage on January 15, 2012.  Nerich then requested a hearing before an Administrative Law Judge ("ALJ").

Following a hearing on April 29, 2013, the ALJ issued an

order dismissing Nerich's claim.  The ALJ made three findings to
support his ruling.  First, the ALJ found that Nerich, "as of
June 22, 2010 [the date of his first claim's denial], had the
mental capacity to understand the procedures for requesting
further review of his [first] claim, but simply did not file a
request for hearing."  Tr. at 18.  Thus, the ALJ concluded, no
basis existed under Social Security Ruling ("SSR") 91-5p to
retroactively extend the deadline for Nerich to appeal his first
claim.

Second, the ALJ found that Nerich's second claim involved
the same facts and issues as his first claim.  Therefore, the
ALJ concluded that the doctrine of res judicata precluded him
from reviewing Nerich's claim on its merits.

Finally, and after considering additional evidence
submitted by Nerich with his second claim, the ALJ found that
the additional evidence was not material because it did not
offer any "reasonable probability that it would change the prior
outcome."   Tr. at 18.  Thus, the ALJ concluded that "none of
the conditions for reopening set forth in 20 CFR 404.988 is
present in this case" and, accordingly, declined to reopen
Nerich's claim.

On July 30, 2013, the Appeals Council denied Nerich's
request for review of the ALJ's dismissal of his second claim.

On September 5, 2013, Nerich filed a complaint with this Court, and after this Court granted his motion for leave to amend his complaint, Nerich filed an amended complaint on March 5, 2014. He then filed a motion to reverse or remand the Commissioner's decision, and the Commissioner responded with motions to affirm her decision and to dismiss for lack of subject matter jurisdiction.

## II.   <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  My review "is limited to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). Findings of fact made by the ALJ are accorded deference as long as they are supported by substantial evidence.  Id.  Substantial evidence exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'"  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222

(1st Cir. 1981)).  If the substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a different conclusion." Id. at 770.  Findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence.  Id.

### III.  ANALYSIS

Nerich offers three arguments to support his motion to reverse the Commissioner's decision: (1) that the Commissioner lacked substantial evidence to conclude that he had the mental capacity to understand the procedures for requesting further review of his January 2010 claim; (2) that the Commissioner erred by refusing to reopen his January 2010 claim on the basis of new and material evidence; and (3) that the ALJ constructively reopened Nerich's 2010 claim by reviewing it on the merits, rendering it subject to judicial review.  See Doc. No. 15-1.  The Commissioner has moved to affirm her decision regarding Nerich's first argument and to dismiss Nerich's second

9

and third arguments for lack of subject matter jurisdiction.
See Doc. Nos. 16, 17, 18.  For the reasons that follow, I grant
both of the Commissioner's motions and deny Nerich's motion to
reverse.

A.   **Social Security Ruling 91-5p**

20 C.F.R. § 404.968 allows a claimant sixty days from
receipt of notice of a claim's denial to request review of that
denial.  20 C.F.R. § 404.968(a)(1).  If a claimant does not
request review within the sixty-day period, the Commissioner's
decision becomes final.  20 C.F.R. § 404.987(a).  Thereafter,
the Commissioner may reopen a final decision only as provided by
20 C.F.R. § 404.988.  Specifically, the Commissioner may reopen
any decision within twelve months "for any reason," within four
years if the Commissioner "find[s] good cause" to do so as
defined by 20 C.F.R. § 404.989, or at any time beyond twelve
months under certain other circumstances that do not pertain
here.  See 20 C.F.R. § 404.988.  SSR 91-5p, however, stipulates
that "[w]hen a claimant presents evidence that mental incapacity
prevented him or her from timely requesting review of an adverse
determination . . . and the claimant had no one legally
responsible for prosecuting the claim" in the prior proceedings,
the claimant automatically establishes good cause to reopen the
prior decision regardless of how much time has passed since the

decision was made.  SSR 91-5p, 1991 WL 208067, at *2 (July 1, 1991).  To establish good cause in this manner, SSR 91-5p requires claimants to show that they "lacked the mental capacity to understand the procedures for requesting review" before the period for requesting further review expired.  Id.

Nerich's January 2010 claim was denied in June 2010.  Tr. at 17.  Because he failed to request review of that decision before the deadline to do so expired in August 2010, the denial became final at that time.  See 20 C.F.R. § 404.987(a).  Nerich now argues, however, that he lacked the mental capacity to understand the procedures for timely requesting further review of his January 2010 claim before the August 2010 deadline expired.  See Doc. No. 15-1 at 4-9.  For that reason, he contends, he can establish good cause under SSR 91-5p for the Commissioner to reopen his claim.  See id.

I am unpersuaded by Nerich's argument and instead determine that substantial evidence supports the ALJ's decision on this issue.[7]  The record evinces only two conditions that may

---

[7]   Although the First Circuit has not decided in a published opinion which standard of review should control SSR 91-5p analysis, the parties agree that the substantial evidence standard should apply, and that position is consistent with the past practice of the First Circuit, other courts of appeals, and this Court.  See Frusher ex rel. Frusher v. Astrue, 391 F. App'x 892, 896 (1st Cir. 2010) (per curiam) (applying substantial evidence standard in SSR 91-5p analysis); Udd v. Massanari, 245

have impaired Nerich's ability to understand the procedures for
requesting further review of his claim: encephalopathy and
depression.[8]  Nerich was hospitalized for five days in January
2010 for end-stage alcoholic liver disease, and he suffered from
encephalopathy at that time.  Tr. at 457.  By March 2010,
however, his records indicate that his encephalopathy was "well
controlled" with treatment.  Tr. at 464.  By May 2010, Nerich
complained of only intermittent confusion, and a treating
physician noted at around that time that Nerich appeared
"[a]lert [and] oriented" despite "appear[ing] significantly

_____

F.3d 1096, 1100 (9th Cir. 2001) (same); Stieberger v. Apfel, 134
F.3d 37, 41 (2d Cir. 1997) (remanding with instruction to apply
substantial evidence standard in SSR 91-5p analysis); Shrader v.
Heckler, 754 F.2d 142, 144 (4th Cir. 1985) (applying substantial
evidence standard in SSR 91-5p analysis); Dupont v. Astrue, 2010
DNH 214, 9-10 (same).  The question before me, therefore, is
whether substantial evidence in the record supports the ALJ's
finding that Nerich did not lack the mental capacity to
understand the procedures for requesting further review of his
first disability claim before the sixty-day deadline expired in
August 2010.

[8] Beyond encephalopathy and depression, Nerich points to only one
other basis for his alleged mental incapacity: "significant
symptomatology as a result of his liver disease."  See Doc. No.
15-1 at 9.  Other than this one conclusory statement, however,
Nerich does not identify the specific symptoms associated with
his "significant symptomatology" or explain how they diminished
his capacity to understand the procedures for requesting review,
much less provide any relevant citation to the record.  See id.
There is no doubt that Nerich suffered from serious liver-
related complications in 2010, but SSR 91-5p requires a showing
of mental incapacity, not of illness in general.  See SSR 91-5p,
1991 WL 208067, at *2; Dupont, 2010 DNH 214, 7.

depressed."  Tr. at 257, 260.  On September 1, 2010, a treating physician concluded that, at that point, Nerich "[did] not have any actual encephalopathy despite discontinuing [treatment]." Tr. at 263.  This evidence supports the ALJ's finding that Nerich's encephalopathy did not prevent him from understanding the procedures for requesting review of his January 2010 claim before the deadline expired in August 2010.  Similarly, although Nerich's records confirm that he suffered from depression at the time of his first claim's denial, subsequent records from October 2010 assess his depression as "[c]ontrolled" at that time.  Tr. at 269.  The ALJ found no evidence suggesting that Nerich's depression presented any cognitive impairment that might have hindered his understanding of the procedures for requesting review of his claim before the August 2010 deadline, and Nerich has pointed to nothing in the record that might rebut the ALJ's finding.  Tr. at 18.  As with Nerich's encephalopathy, therefore, substantial evidence supports the ALJ's finding that Nerich's depression did not prevent him from understanding how to timely request further review of his January 2010 claim.

Nerich challenges the ALJ's findings mainly by urging me to adopt a different interpretation of the record from that of the ALJ.  See Doc. No. 15-1 at 4-9.  The substantial evidence standard, however, forbids me from disturbing a factual finding

made by an ALJ so long as substantial evidence supports that finding.  See Irlanda Ortiz, 955 F.2d at 769.  Here, substantial evidence supports the ALJ's conclusion that Nerich did not lack the capacity to understand the procedures for timely requesting further review of his January 2010 claim.  Thus, no basis exists under SSR 91-5p for reopening Nerich's initial claim, and I therefore grant the Commissioner's motion to affirm that portion of her decision.

**B.**   **Reopening on Basis of New and Material Evidence**

Next, Nerich argues that the ALJ erred by declining to reopen his case after finding that the additional evidence Nerich submitted during the second proceeding was not new and material.  The Commissioner responds by arguing that this Court lacks jurisdiction to hear this argument and, therefore, that I should dismiss it.

The Social Security Act grants district courts jurisdiction to review only "final decision[s]" of the Commissioner.  See 42 U.S.C. § 405(g).  Both the Supreme Court and the First Circuit have held that the Commissioner's denial of a request to reopen a prior claim is a discretionary action, not a "final decision," and therefore is not subject to judicial review.  See id.; Califano v. Sanders, 430 U.S. 99, 108 (1977); Dvareckas v. Sec'y of Health & Human Servs., 804 F.2d 770, 772 (1st Cir. 1986)

("Whether additional medical reports are new or material or warrant reopening is precisely the type of issue which, absent a constitutional claim, we may not review . . . ."); see also Martin v. Shalala, 927 F. Supp. 536, 543 (D.N.H. 1995).  A claimant may avoid the final decision requirement for judicial review only by raising a colorable constitutional claim against the Commissioner's action.  See Sanders, 430 U.S. at 108-09; Dvareckas, 804 F.2d at 772.  Although Nerich contends that the ALJ erred by concluding that the additional evidence he submitted with his second application was not material and, therefore, did not warrant reopening, he has not alleged any constitutional violation attributable to that conclusion.  Thus, this Court lacks jurisdiction under § 405(g) to review the ALJ's denial of Nerich's request to reopen his prior claim on the basis of new and material evidence.

Nerich does not address the controlling decisions in Califano v. Sanders or Dvareckas v. Secretary of Health and Human Services or otherwise explain how this Court might have jurisdiction to hear his challenge against the ALJ's refusal to reopen his claim on the basis of new and material evidence. Instead, and perhaps misunderstanding this case's procedural posture, Nerich cites this Court's decision in Martin v. Shalala, 927 F. Supp. 536 (D.N.H. 1995), and the First Circuit's

15

decision in Evangelista v. Secretary of Health and Human Services, 826 F.2d 136 (1st Cir. 1995).  See Doc. No. 15-1 at 10.  Neither case supports Nerich's position.  In Martin, the claimant brought constitutional claims against the ALJ's refusal to reopen that involved due process and defective notice.  927 F. Supp. at 543-44.  Apart from those constitutional claims, however, this Court expressly recognized that "absent a colorable constitutional claim, courts do not have jurisdiction to review a decision of the [Commissioner] not to reopen a claim."  Id. at 543.  Nerich has not articulated any constitutional violation arising from the ALJ's refusal to reopen on the basis of new and material evidence.  Moreover, in Evangelista, the claimant timely sought district court review and asked the court to remand his claim under § 405(g) for the taking of new evidence, not, as here, to reopen a previously decided claim for which the period to request judicial review under § 405(g) had already expired.  See 42 U.S.C. § 405(g); Evangelista, 826 F.2d at 139.  Evangelista, therefore, does not apply to Nerich's claim.[9]

---

[9] Nerich also argues that 20 C.F.R. § 404.903, which provides that an action by the Commissioner "[d]enying [a] request to reopen a determination or a decision" is not subject to judicial review, does not bind this Court.  See Doc. No. 20 at 3; 20 C.F.R. § 404.903(1).  This Court's jurisdiction to review "any final decision of the Commissioner," however, derives from §

Thus, under § 405(g) and controlling precedent, I must dismiss Nerich's second argument for lack of subject matter jurisdiction.

## C.  **Constructive Reopening**

Even if this Court lacks jurisdiction to review a refusal to reopen a claim, Nerich argues, the ALJ below rendered his decision reviewable because he constructively reopened Nerich's original claim.  See Doc. No. 15-1 at 20-23.  Neither the law of constructive reopening nor the record validates Nerich's position.[10]

It is true, as Nerich contends, that even if an ALJ does not expressly reopen a claim, an ALJ may nevertheless do so constructively by reviewing the claim on its merits.  See Morin

_____

405(g) and the manner in which the Supreme Court and the First Circuit have construed it, not from regulation.  See 42 U.S.C. § 405(g); Sanders, 430 U.S. at 108; Dvareckas, 804 F.2d at 772.

[10] The Commissioner argues that this Court "lacks jurisdiction to consider [Nerich's] . . . argument . . . that the ALJ constructively reopened his prior application by receiving new evidence and holding a hearing."  Doc. No. 18 at 7.  If the Commissioner means to contend that district courts lack jurisdiction to even initially determine whether an ALJ constructively reopened a claim, I disagree.  To be clear, this Court has jurisdiction to consider whether the ALJ constructively reopened Nerich's original claim.  If the ALJ had in fact done so, then subject matter jurisdiction would attach under § 405(g).  See Morin v. Sec'y of Health & Human Servs., 835 F. Supp. 1414, 1422 (D.N.H. 1992).  It is only because I conclude that the ALJ did not constructively reopen Nerich's original claim that I must dismiss Nerich's claim for lack of jurisdiction.

v. Sec'y of Health & Human Servs., 835 F. Supp. 1414, 1422
(D.N.H. 1992).  Once an ALJ constructively reopens a claim by
making a new merits decision, that decision becomes subject to
judicial review under § 405(g) just like any other final
decision made by the Commissioner.  See id.  Not every hearing
or taking of evidence conducted by an ALJ considering a request
to reopen, however, qualifies as a constructive reopening.  See
Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1138-39
(1st Cir. 1988).  Indeed, "[i]t is entirely permissible for the
ALJ to make a threshold inquiry and review the evidence
presented by the claimant in order to resolve the reopening
issue."  Morin, 835 F. Supp. at 1422; see also Torres, 845 F.2d
at 1139.  Otherwise, "[i]f simply reviewing evidence relating to
a previous claim is viewed as a reconsideration on the merits,
the previous case would be constructively reopened virtually
every time a successive claim is filed."  Girard v. Chater, 918
F. Supp. 42, 45 (D.R.I. 1996).

To determine whether an ALJ constructively reopened a
claim, therefore, I must decide whether the ALJ dismissed the
disputed claim after finding no basis for reopening, an action I
cannot review, or instead denied the claim after revisiting its
merits, thereby constructively reopening the claim and
subjecting it to my review.  Thus, in Morin v. Secretary of

18

Health and Human Services, this Court concluded that an ALJ had
constructively reopened a previously decided disability claim by
reviewing it on its merits.  835 F. Supp. at 1422-23.  There,
however, the ALJ did not expressly refuse to reopen the claim,
applied the five-step sequential analysis prescribed by 20
C.F.R. § 404.1520, and considered new evidence submitted by the
claimant to determine the merits of the claim, not whether the
evidence warranted reopening.  Id.  In Girard v. Chater, by
contrast, the district court determined that the ALJ had not
constructively reopened the disputed claim because the ALJ
expressly refused to reopen the claim, did not apply the five-
step sequential analysis, and considered the claimant's new
evidence only to decide "whether any of that evidence was new
and material."  918 F. Supp. at 45 (internal quotations
omitted).  For those reasons, the court concluded, the ALJ "did
nothing that could be construed as a reconsideration of [the
claim] on the merits."  Id.; see also Wells v. Chater, No. 94-
439-JD, 1996 WL 360362, at *9 (D.N.H. Apr. 30, 1996) (finding
that ALJ had not revisited previously decided claim on the
merits and, therefore, had not constructively reopened claim).

    The ALJ's dismissal of Nerich's claim falls squarely within
the Girard category.  He expressly refused to reopen Nerich's
January 2010 claim, writing that "none of the conditions for

                             19

reopening set forth in 20 CFR 404.988 is present in this case. Accordingly, the previous determination remains final and binding." Tr. at 18.  He did not apply the five-step sequential analysis, and he considered the additional evidence that Nerich submitted only to determine whether that evidence offered a reasonable probability that it would change the prior outcome of Nerich's claim.  See Tr. at 18-19.  Nothing in the ALJ's decision suggests that he revisited the merits of Nerich's claim.  See Tr. at 17-20.  Thus, I cannot conclude that the ALJ constructively reopened Nerich's claim.  See Girard, 918 F. Supp. at 45.

Nerich relies heavily on the fact that the ALJ held a hearing and took evidence from both Nerich and a vocational expert before issuing his decision.  See Doc. No. 15-1 at 21-23. It is well settled, however, that an "ALJ [is] entitled to make a threshold inquiry and review the evidence presented by the claimant," including evidence offered at a hearing, "in order to resolve the reopening issue." Torres, 845 F.2d at 1139; see also Rios v. Sec'y of Health, Educ., & Welfare, 614 F.2d 25, 26 (1st Cir. 1980) ("A purely discretionary hearing [held for] purposes of receiving allegedly new and material evidence is not a "hearing" within the meaning of § 405(g)."). Nothing in the hearing transcript suggests that the ALJ conducted anything

other than this type of discretionary hearing.  Indeed, the ALJ opened the hearing by observing that he "[had] a request for [the] reopening of [Nerich's] prior application due to new and material evidence."  Tr. at 24.  Thus, the ALJ continued, "I'll hear as to what constitutes the new and material evidence."  Tr. at 24.  Nerich's counsel at the hearing — also Nerich's counsel in this appeal — then implicitly acknowledged the hearing's purpose and scope.  See Tr. at 25.  In short, the ALJ's decision itself did not constructively reopen Nerich's claim, and the ALJ did nothing in the hearing to alter that result.

Because the ALJ did not constructively reopen Nerich's claim, this Court lacks jurisdiction to review it.  Thus, I must grant the Commissioner's motion to dismiss Nerich's third claim for lack of subject matter jurisdiction.

## IV.   CONCLUSION

For these reasons, I grant the Commissioner's motions to affirm her decision regarding SSR 91-5p (Doc. No. 17) and to dismiss Nerich's claims regarding reopening on the basis of new and material evidence and constructive reopening for lack of subject matter jurisdiction (Doc. No. 16).  I deny Nerich's motion to reverse (Doc. No. 15).  The clerk is directed to enter

judgment accordingly and close the case.

    SO ORDERED.


                                        /s/Paul Barbadoro
                                        Paul Barbadoro
                                        United States District Judge

November 17, 2014

cc:  T. David Plourde, Esq.
      D. Lance Tillinghast, Esq.